# Supreme Court of the Navajo Nation

**PC&M Construction Company, Inc., Appellant,**

v.

**Navajo Nation and**
**Navajo Department of Financial Services, Appellees.**
**Decided July 22, 1994**

## OPINION

Before Yazzie, Chief Justice, and Austin, Associate Justice.

John A. Chapela, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant; and Helen E. Avalos, Esq., Navajo Nation Department of Justice, Window Rock, Navajo Nation (Arizona), for the Appellees.

Opinion delivered by YAZZIE, Chief Justice.

PC&M Construction Company appeals a decision by the Navajo Nation Department of Financial Services to collect a judgment, using an offset provision in the Navajo Business and Procurement Act.

### I

The Office of Navajo Labor Relations ("ONLR") brought an action on behalf of three Navajo workers against PC&M Construction Company, Inc. (PC&M), the primary contractor on a Navajo Nation funded construction project. The ONLR alleged that PC&M and two of its subcontractors, Ron Prows Construction ("RPC") and Native American Construction and Supply ("NACS"), failed to pay the Navajo workers at the "prevailing wage rate" as required by the Navajo Preference in Employment Act ("NPEA"), 15 N.T.C § 607 (1985) (repealed 1990), and the construction contract. The ONLR established the prevailing wage rate for this project using the State of Arizona's minimum wage scale.

The action was filed with the Navajo Nation Labor Commission ("Commission"). On April 30, 1992, the Commission found the three defendants jointly and severally liable for violating Section 607 of the NPEA and Section 11.C and 11.M of Navajo Manpower Utilization Requirements. *Office of Navajo Labor Relations v. PC&M Constr. Co., Inc.*, NNLC No. 91-006 (decided April 30, 1992). The Commission ordered the three defendants to jointly and several-

ly pay the three workers their lost wages plus interest at 10% per annum. *Id.* at 5, 6. PC&M, RPC, and NACS appealed the Commission's decision to this Court. We dismissed the appeal because the Appellants did not file a brief as required by our civil appellate rules. *Ron Prows Constr., et al. v. Office of Navajo Labor Relations*, No. A-CV-21-92 (Order filed October 22, 1992). Our dismissal of the appeal left intact the judgment entered by the Commission against the three construction company defendants.

On December 21, 1992, the controller of the Navajo Nation Department of Financial Services ("NNDFS") notified PC&M by letter that it intended to offset the amount of money PC&M owed under the agency judgment. The amount was to be deducted from other monies the Navajo Nation owed to PC&M on another construction project. PC&M appealed this letter to a hearing officer within the NNDFS and a hearing was held. The hearing officer held that the Navajo Business and Procurement Act ("Procurement Act"), 12 N.T.C. § 1507, authorized the NNDFS' intent to offset. *In re PC&M Constr. Co., Inc.*, No. 01-93-F (decided February 2, 1993).

PC&M appealed the hearing officer's decision to this Court. Before the appeal could be granted, this Court had to decide whether it had jurisdiction over the appeal. We held that we did. *PC&M Constr. Co., Inc. v. Navajo Nation, et al.*, 7 Nav. R. 58 (1993).

On October 11, 1993, the Nation filed a Motion to Strike because certain exhibits were not made a part of the record.[1] We granted the Motion to Strike.[2]

## II

The issue on appeal is whether the offset provision of the Navajo Business and Procurement Act, 12 N.T.C. § 1507, can be used to enforce the Commission's judgment for the benefit of individual Navajo workers.

## III

The ONLR is an administrative agency established by the Navajo Nation Council to implement Navajo Nation labor policies, and monitor and enforce the NPEA. 15 N.T.C. § 10 (1990). The ONLR brings employment disputes between aggrieved workers and their employers to hearings before the Commission. Under the NPEA, the ONLR can abstain from action and permit workers to sue on their own behalf, or it can generate its own charge against an employer. 15

---

1. The Navajo Nation filed a Motion to Strike exhibits A through F, and arguments based on those exhibits, because they were not made a part of the record during the administrative hearing. They included the issue of "[w]hether the appellant [PC&M] was justified in its reliance on the assurance of the Executive Director of the Navajo Division of Community Development that the prevailing wage rate for the Whitecone Pre-school project had been waived." PC&M's Brief at 1.

2. The Court ordered exhibits A through F, and all arguments based on those exhibits, stricken from the record. *PC&M Constr. Co., Inc. v. Navajo Nation Department of Financial Services*, 7 Nav. R. 72 (1993).

N.T.C. § 10. B.1., H.1. (a), H.2. (a), I (1990). The ONLR uses the latter proce-
dure when it wishes to stop an offensive employment practice which impacts a
broad class of Navajo workers and specific workers desire to remain anonymous.
A third method allows the ONLR to file a complaint with the Commission on
behalf of Navajo workers. 15 N.T.C. § 10.1.1., H.2.(a) (1990). If this option is
used, it precludes the worker's right to sue on his or her own behalf. The ONLR
frequently uses this method when it detects issues that are of considerable inter-
est, not only to workers, but to protect the interests of the Nation as a whole.

When the ONLR acts in its official capacity, it has available all Navajo Nation
law needed to officially carry out its obligations under the NPEA. The NPEA
requires contractors to pay workers the prevailing wage rate as established by the
ONLR. PC&M's failure to pay workers at that rate was a violation of the NPEA
and a breach of its contract with the Nation. The ONLR had discretion to be
directly involved in this suit and represent the aggrieved Navajo workers. We
conclude that the ONLR acted properly under authority of the NPEA as a legit-
imate party to the suit in its representation of the individual Navajo workers.

The Commission's decision against PC&M and the two subcontractors award-
ed a money judgment in favor of the Navajo workers represented by the Nation
through the ONLR. PC&M argues that because the judgment award was specif-
ically for the workers, and not for the Nation, it has no authority to collect that
judgment using the offset provision in the Procurement Act. PC&M argues that
the workers can collect their judgment as private parties using the remedies
available in 7 N.T.C. §§ 701-712 (1985).

The Navajo Nation was the only party in the action before the Commission. It
acted in an *ex relatione* capacity. The three Navajo workers, on whose behalf the
ONLR was acting, were not even parties to the action. The Commission's judg-
ment was, therefore, for the Nation; the only party to the action. It is immaterial
that the workers will ultimately benefit.

The Procurement Act was created to enforce the Navajo Nation Collection
System in the best interests of the Navajo Nation. *Navajo Nation Council
Resolution* No. CD-62-86 (December 11, 1986). The relevant part of the
Procurement Act provides as follows:

> If [a] ... business has an outstanding money judgment against it in favor of
> the Navajo Nation ... upon due notice the Navajo Nation may offset its
> money claim against any amount it owes to or has account payable to the
> ... business ....

12 N.T.C. § 1507 (1986).

The Commission entered judgment in favor of the Navajo Nation. The ONLR
is entitled to use the offset provision cited above to collect the outstanding
money judgment from PC&M, because the ONLR fits under the definition of
"Navajo Nation" in the Procurement Act. 12 N.T.C. § 1503 a.(6), (8)-(9) (1986).
The Procurement Act does not exclude judgments from offset proceedings
entered in favor of the Nation acting in an *ex relatione* capacity. We hold that

the offset is proper.

This Court will not create a judicial exception to the offset provision of the Procurement Act for judgments entered in favor of the Nation when it acts in an *ex relatione* capacity, as PC&M suggests. That is a matter for the Navajo Nation Council to consider. We believe that such an exception would work a substantial injustice to Navajo workers whose claims have been controlled by the ONLR throughout the NPEA enforcement process. It would very likely reduce the leverage the ONLR has to assure compliance with the NPEA.

The decision of the hearing officer is AFFIRMED.